**2006 BNH 045**     Note:   This is an unreported opinion.  Refer to AO 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                Bk. No. 05-15683-JMD
                                                                      Chapter 7
Michael J. Dolan, Jr.,
            Debtor


Carol A. Kolomiitchenko,
            Plaintiff

v.                                                                    Adv. No. 05-1211-JMD

Michael J. Dolan, Jr.,
            Defendant


*Patrick S. Bedard, Esq.*
*Eliot, Maine*
*Attorney for Plaintiff*

*Bradley M. Lown, Esq.*
*Coughlin, Rainboth, Murphy & Lown*
*Portsmouth, New Hampshire*
*Attorney for Debtor/Defendant*


## MEMORANDUM OPINION

### I.  INTRODUCTION

Carol Kolomiitchenko (the "Plaintiff") commenced this adversary proceeding on December 1, 2005, seeking a determination that a certain obligation owed to her by her ex-husband, Michael J. Dolan, Jr. (the "Debtor"), under their final divorce decree[1] (the "Divorce

---

[1] See Exhibit 1.

Decree") is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(4), (a)(5), (a)(6), and (a)(15).[2] The Court held a one-day trial on June 9, 2006.  This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

The parties are presently divorced from one another.  Throughout the majority of their marriage, the Debtor operated Busy Bee Janitorial Services, LLC ("Busy Bee"), a family business that provided janitorial services.  At the time of their divorce in 1994 the Plaintiff was a homemaker and the Debtor was the president and 51% shareholder of Busy Bee.  After the parties were divorced the Plaintiff went back to school and became a registered nurse and the Debtor became the sole shareholder of Busy Bee by purchasing the remaining interest in the company.

The Divorce Decree was entered on September 23, 1994.  It obligated the Debtor to pay the Plaintiff alimony of $4,500.00 per month for five years, commencing immediately, after which the Debtor was to begin paying the Plaintiff $125,000.00 plus interest for the Plaintiff's share of the Debtor's original 51% interest in Busy Bee. The alimony was paid in full.  The $125,000.00 business interest obligation was not fully satisfied.

---

[2] Unless otherwise indicated, all references to "section" or "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., prior to amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

The Divorce Decree incorporated by reference a stipulation agreement (the "Divorce Agreement") that detailed the parties' agreement regarding, among other things, the business interest and alimony obligations. Section VII of the Divorce Agreement (the "Business Asset Section") provided that it was the intent of the parties that the Debtor pay $125,000.00 to the Plaintiff for her interest in Busy Bee "over a period of time providing that he continues to own and operate said business." It also provided that the full principal balance plus interest would become due and payable immediately in the event the Debtor diluted more than half of his interest in the company. Finally, it granted the Plaintiff a security interest in Busy Bee but provided that her lien would be subordinated to institutions providing reasonable financing required to operate the business.

Section XI of the Divorce Agreement (the "Alimony Section") stipulated that alimony payments were an integral part of the property settlement and the amount and duration of such payments were fixed. However, it provided four circumstances under which the Debtor could petition the divorce court for a reduction in alimony, one of which was the bankruptcy of Busy Bee. This option to petition the court for a reduction was unique to the Alimony Section. The Business Asset Section did not provide any analogous provisions for a reduction in the amount, and its terms were not integrated with amounts due under the Alimony Section.

On September 28, 1999, when the alimony obligation was fully satisfied, the parties entered into a modification of the Divorce Decree (the "1999 Stipulation"), which reaffirmed and ratified the original judgment. It modified the repayment terms of the Business Asset Section and specified that the Debtor would sign a new promissory note in September 2000 that would obligate the Debtor to the original principal sum of $125,000.00 plus all capitalized interest,

3

amortized over 84 months at 6% interest per annum.  The September 2000 promissory note (the "Promissory Note") was executed in the total amount of $156,890.00 (original principal sum + capitalized interest).  It was executed pursuant to the terms of the Divorce Decree and was made specifically subject to the provisions in the Business Asset Section and the Alimony Section as modified by the 1999 Stipulation.  It obligated the Debtor to make monthly payments of $2,284.84 for seven years beginning on October 1, 2000, and continuing through September 1, 2007.  The Promissory Note also reiterated the provision found in the Business Asset Section that in the event of a default in payments the principal plus interest would be immediately due and payable together with costs of collection and reasonable attorney's fees.

    For eleven months the Debtor made full payments to the Plaintiff.  Beginning on September 1, 2001, the Debtor began making reduced monthly payments of only $1,000.00, with some monthly variation, and continued to make these payments until May 2005, at which point he stopped making payments all together.  At that time the total amount paid by the Debtor, $68,918.08, had effectively satisfied 31 full payments and had begun paying the 32nd payment.  According to the Promissory Note, a principal balance of $105,775.17 at 6% interest was still due and owing as of the last payment made by the Debtor in May 2005.   Although the Debtor grew exceedingly delinquent on his payments over the course of five years, there was a consistent and uninterrupted payment stream and the Plaintiff did not, during that time, enforce her contractual right to full and immediate repayment.

    Also in 2005 the Debtor sold Busy Bee for $150,000.00 after the profitability of the company declined drastically due to increased competition.  All proceeds from the sale were

used to pay outside creditors of Busy Bee, including a secured creditor and unsecured trade creditors.  The Plaintiff received nothing from the sale.

The Debtor filed his bankruptcy petition on October 15, 2005 (the "Petition Date").  The Plaintiff, a creditor of the Debtor, filed a proof of claim for an unsecured, nonpriority claim in the amount of $108,590.73, representing the total remaining amount due under the Promissory Note as of the Petition Date.  It is the dischargeability of this debt that is the subject of this dispute.  On December 1, 2005, the Plaintiff filed the above captioned adversary proceeding seeking the Court to find the $108,590.73 debt nondischargeable under §§ 523(a)(4), (a)(5), (a)(6), and (a)(15).  At the close of trial the parties agreed that the case should be decided under § 523(a)(15).

## III.  DISCUSSION

### A.  Section 523(a)(15)

As applicable on the Petition Date, § 523(a)(15) provided that a debtor will not be discharged from a debt when the debt is:

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless –
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor . . . .

11 U.S.C. § 523(a)(15). Although the semantics of § 523(a)(15) make it confusing, as a general rule, marital debts in the nature of alimony or support are governed by § 523(a)(5), whereas marital debts in the nature of property settlements fall under § 523(a)(15). Garrity v. Hadley (In re Hadley), 239 B.R. 433, 435 (Bankr. D.N.H. 1999). See also 4 King et al., Collier on Bankruptcy ¶ 523.11[5] (15th rev. ed. 1998).

There are three threshold requirements under § 523(a)(15): (1) there must be a debt; (2) the debt must have been incurred in the course of a divorce or separation; and (3) the debt must be in the nature of a property settlement. The parties agree that to the extent that there is a debt owed it arises out of a divorce decree and that it constitutes a property settlement. However, the Debtor contends that pursuant to the terms of the Promissory Note he no longer owes Plaintiff a debt. Accordingly, the Court must first determine whether a debt is owed to the Plaintiff, and if so in what amount.

If a debt is the kind described in § 523(a)(15), it is nondischargeable unless one of two tests is satisfied: (1) the debtor is unable to pay the debt from income or property not reasonably necessary for maintenance or support; or (2) the benefits of a discharge to the debtor outweigh the detrimental effects of such a discharge on a spouse, former spouse, or child. See Hadley, 239 B.R. at 436; Shea v. Shea (In re Shea), 221 B.R. 491, 499 (Bankr. D. Minn. 1998). Thus, the Plaintiff must show that neither of these two tests is satisfied. If either of the two tests is satisfied, then the debt is dischargeable. The Debtor bears the burden of production in regard to § 523(a)(15)(A) while the Plaintiff bears the burden of production for § 523(a)(15)(B) and the burden of persuasion on all elements of § 523(a)(15). Hadley, 239 B.R. at 437. The Court's decision under §§ 523(a)(15)(A) and (B) must be based upon the financial ability and financial

circumstances of the parties as of the time of trial.  See Konick v. Konick (In re Konick), B.A.P. No. MB 98-034, 1999 WL 592657, at *5 (B.A.P. 1st Cir. July 14, 1999); Dressler v. Dressler (In re Dressler), 194 B.R. 290, 300 (Bankr. D.R.I. 1996) ("Unlike § 523(a)(5)'s 'rear view mirror' analysis, § 523(a)(15) instructs us to look out the windows.  It calls for a 'current circumstances' review of non-support divorce obligations and the consequences of discharge upon them.").

**B.  Is There a Debt Owed by Debtor to Plaintiff?**

As noted above the parties signed a number of documents in relation to the dissolution of their marriage.  Combined, these documents obligate the Debtor to pay a sum certain, along with applicable interest, to the Plaintiff for her interest in Busy Bee as determined on the date of entry of the Divorce Decree.  The Debtor has acknowledged his obligation to pay this debt as evidenced by a five year payment history.  At trial the Debtor argued in closing that any debt owed by him to the Plaintiff was extinguished by the state law statute of limitations as applied to the terms of the Promissory Note.  This Court finds that the applicability of a statute of limitations is a question of enforceability rather than dischargeability, and therefore is properly left to the appropriate state court.

Shortly after the Debtor filed his petition for bankruptcy relief with this Court the Plaintiff filed a proof of claim for $108,590.73.  There has been no objection by Debtor to this proof of claim.  The Plaintiff's claim is based upon the balance owed to her under the Promissory Note which was executed to liquidate and establish the terms of the Debtor's payment of his obligations under the Business Asset Section of the Divorce Decree.  The execution of the Promissory Note did not extinguish or alter the nature or amount of the Debtor's obligations to the Plaintiff.  The execution of the Promissory Note did not change the nature of

the debt for dischargeability purposes.  Archer v. Warner, 538 U.S. 314, 320 (2003).  Since it is undisputed that the Promissory Note was not paid in full or that the obligation evidenced by the Promissory Note had been modified by the divorce court prior to the Debtor's filing bankruptcy, the Debtor's obligation to the Plaintiff remains.  Therefore, for purposes of this proceeding the Court determines that the Plaintiff has a legitimate claim against the Debtor under the Divorce Decree and the Promissory Note.

Therefore, all three initial requirements of § 523(a)(15) have been met and the Debtor's obligation to the Plaintiff under the Promissory Note is not dischargeable unless one of the two tests set forth in § 523(a)(15)(A) and (B) is satisfied.

### C. The Income Test

Under § 523(a)(15)(A) the inquiry focuses solely on whether the Debtor is able to make payments to the Plaintiff.  This Court has, in past cases, chosen to use the disposable income test, as defined in § 1325(b)(2), as an appropriate way to analyze the question of whether a debtor is able to pay his debt and, in keeping with precedent, the Court will again employ this test.[3]  Hadley, 239 B.R. at 437.  See also Konick, 1999 WL 592657, at *4 ("It is proper to use the disposable income test to determine [the debtor's] ability to pay."); Brasslett v. Brasslett (In re Brasslett), 233 B.R. 177, 183 (Bankr. D. Me. 1999); Dressler, 194 B.R. at 304.  Under the disposable income test the Court considers the income of the Debtor and his spouse in determining the ability to pay.  The Debtor argues that his wife's income should not be considered in making this determination because they keep their finances separately and have only been married for a few years.  However, that income is a part of the Debtor's financial

---

[3] The Court also notes that both parties requested that the financial analysis be done using the disposable income test.

8

circumstances as of the time of trial and must be considered by the Court.  Hadley, 239 B.R. at 438.  See also Shea, 221 B.R. at 499; Brasslett, 233 B.R. at 184; Halper v. Halper (In re Halper), 213 B.R. 279, 283 (Bankr. D.N.J. 1997) ("In applying § 523(a)(15)(A), most courts have held that a debtor's new spouse's finances should be considered as part of a determination of the debtor's ability to pay.").

After the sale of Busy Bee, the Debtor was employed by the purchaser.  He testified at trial that his gross salary is approximately $75,000.00 a year plus benefits, which include a car, gas, a cell phone and laptop computer, and health and disability insurance.  Financial records as of May 2006 indicate that the Debtor received a weekly net income of $1,071.70, or a monthly net income of $4,644.03.[4]  The Debtor also testified at trial that his wife earns a gross salary of approximately $55,000.00.  According to the most recent tax return available to the Court the Debtor's wife makes an annual salary, after taxes, of $39,238.00 or a net monthly income of $3,269.83.[5]  The total monthly income for both the Debtor and his wife is $7,913.86.[6]

The Debtor has provided a financial affidavit, supplemented by trial testimony, which details his monthly household expenses.  The Court will disregard certain tax expenses listed by the Debtor as they have been taken into consideration while determining the Debtor's monthly net income.  After making these adjustments the Court finds that the Debtor's monthly expenses total $5,906.00.  Ultimately, this leaves the Debtor with a monthly surplus of $2,007.86.[7]

---

[4] ($1,071.70 x 52 ÷ 12 = $4,644.03).

[5] ($39,238.00 ÷ 12 = $3,269.83).

[6] ($4,644.03 + $3,269.83 = $7,913.86).

[7] ($7,913.86 - $5,906.00 = $2,007.86).

9

Once the Debtor's disposable monthly income has been determined, § 523(a)(15)(A) requires the Court to determine whether the debtor has the ability to pay a debt from income "not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ." § 523(a)(15)(A) (emphasis added). Therefore, the Court must adjust the Debtor's disposable monthly income by the amount of any expenses not reasonably necessary for maintenance or support of the Debtor and his spouse. See Shea, 221 B.R. at 500-01 (ignoring unnecessary expenses when applying § 523(a)(15)(A)). The Debtor has listed several expenses in his financial affidavit which appear excessive. Specifically, the Debtor lists monthly expenses of $300.00 for meals eaten out, $300.00 for clothing and shoes, and $400.00 for entertainment and recreation, for a total of $1,000.00. The Court finds that the expenses for clothing and recreation and entertainment are excessive in their own right and in view of the amount spent by the Debtor for meals eaten out. Therefore, the Court shall add back to the Debtor's disposable monthly income one-half of the amounts for clothing and recreation and entertainment,[8] reducing the Debtor's total monthly expenses to $5,556.00.[9] Based upon this adjustment, the Court finds that the Debtor has disposable monthly income of $2,357.86[10] which he could apply to the debt he owes to the Plaintiff under the Promissory Note and that the Plaintiff has satisfied her burden of persuasion under § 523(a)(15)(A).

---

[8] ($700.00 ÷ 2 = $350.00).

[9] ($5,906.00 - $350.00 = $5,556.00).

[10] ($7,913.86 - $5,556.00 = $2,357.86).

**D. The Balancing Test**

In addition to satisfying the test under § 523(a)(15)(A), the Plaintiff must also meet her burden of persuasion for the balancing test under § 523(a)(15)(B) or the Debtor's obligations to her will be discharged.  More precisely, the Plaintiff must show that a discharge of the debt would result in a detriment to her that outweighs the benefit to the Debtor.  The issue, therefore, is in whose favor this balance tips.

Similar to the income test under § 523(a)(15)(A), it is appropriate to consider the Debtor's disposable income in applying the § 523(a)(15)(B) balancing test as well as the Plaintiff's disposable monthly income.  The comparative assets of the parties is also a factor in the balancing test.  Hadley, 239 B.R. at 439.  See also Konick, 1999 WL 592657, at *5 (comparing both parties' financial circumstances in the context of § 523(a)(15)(B)); Brasslett, 233 B.R. at 185 (same); Dressler, 194 B.R. at 305-06 (same).

The Plaintiff, like the Debtor, provided a financial affidavit which was supplemented by trial testimony and which details the combined financial status of her and her husband.  According to this financial affidavit the Plaintiff's combined gross monthly income is $6,924.44.  After subtracting out the typical tax and insurance deductions, as provided in the financial affidavit, the Court determines that the combined disposable monthly income of the Plaintiff is $4,625.09.[11]

The Plaintiff's financial affidavit also provides a summary of monthly expenses.  The Court will disregard certain expenses listed by the Plaintiff as they have been taken into

---

[11] The Plaintiff's financial affidavit states that she and her husband pay a total of $2,299.35 in federal and state taxes, health insurance, and 401(k) contributions.  Subtracting these expenses from the couple's gross monthly income provides their net monthly income:  $6,924.44 - $2,299.35 = $4,625.09.

11

consideration while determining her disposable monthly income. After making these adjustments the Court finds that the Plaintiff's monthly expenses total $4,677.83. Ultimately, this leaves the Plaintiff with a negative disposable monthly income of $52.74.[12] As with the Debtor, the Court must adjust the Plaintiff's monthly expenses if any of her expenses are not reasonably necessary. The Court notes one expense that is not reasonably necessary, the Plaintiff's attorney's fee of $776.23. Though the Court makes no judgment as to the overall reasonableness of the fee, it is not an ongoing monthly expense necessary for the support of the Plaintiff or her family. After adjusting for that expense, the Plaintiff's new monthly expenses are $3,901.60.[13] This leaves her, ultimately, with a disposable monthly income of $723.49.[14]

The evidence at trial reflects that the Plaintiff has a net worth of approximately $194,500.00[15] and the Debtor has a net worth of approximately $164,000.00.[16] While the Plaintiff has a slightly higher net worth ($30,500.00), the Debtor has slightly more in liquid assets ($5,000.00).[17] The Court finds that the net worth and liquid assets positions of the parties are sufficiently similar that their assets do not materially impact the balancing test. Therefore, the Court shall look to their comparative incomes.

---

[12] ($4,625.09 - $4,677.83 = -$52.74).

[13] ($4,677.83 - $776.23 = $3,901.60).

[14] ($4,625.09 - $3,901.60 = $723.49).

[15] The Plaintiff's net worth consists of equity in her home ($172,000.00), bank accounts ($1,500.00) and a retirement account ($21,000.00).

[16] The Debtor's net worth consists of equity in his home ($58,000.00), a motorcycle ($4,500.00), bank accounts ($2,000.00) and retirement accounts ($99,500.00).

[17] The Debtor's liquid assets consist of a motorcycle and a bank account ($6,500.00) while the Plaintiff's liquid assets consist of bank accounts ($1,500.00).

According to the financial affidavits presented by both parties and supplemented by trial testimony, the Debtor has a monthly surplus of $2,357.86 whereas the Plaintiff has a monthly surplus of $723.49.  The Debtor's surplus monthly income is approximately three times that of the Plaintiff's.  Moreover, the Debtor's surplus is almost equal to the monthly payment amount due under the Promissory Note.  In light of the numbers presented, the Court finds that the § 523(a)(15)(B) balancing test weighs in favor of the Plaintiff.

## IV.  CONCLUSION

For all the foregoing reasons the Court finds that the Plaintiff has satisfied her burden of persuasion under 11 U.S.C. § 523(a)(15).  Accordingly, the Debtor's obligation to pay the Plaintiff the debt owed under the Promissory Note is nondischargeable.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   November 28, 2006                    /s/ J. Michael Deasy
                                             J. Michael Deasy
                                             Bankruptcy Judge